252 S.W.2d 641 (1952)
STATE
v.
HIGGINS.
No. 28522.
St. Louis Court of Appeals, Missouri.
November 18, 1952.
Motion for Rehearing or to Transfer to Denied December 12, 1952.
Victor Packman, St. Louis, for appellant.
John J. Kelly, Asst. Circuit Atty., St. Louis, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied December 12, 1952.
*642 ANDERSON, Judge.
In this case defendant, Joseph Higgins, was tried under an information charging him with the crime of assault with intent to ravish. Said trial resulted in a verdict finding defendant guilty of common assault and assessing defendant's punishment at three months in the workhouse and a fine of $100. Defendant has appealed.
The information was filed May 27, 1948, and alleged that on April 24, 1948, defendant "in and upon one Elizabeth Hartle, unlawfully and feloniously did make an assault, with intent her, the said Elizabeth Hartle, then and there unlawfully, forcibly and against her will, feloniously to ravish and carnally know, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."
On January 17, 1950, the cause came on for trial. Said trial progressed from day to day and was completed on January 19, 1950. The Court, by appropriate instructions, submitted to the jury the issue of assault with intent to ravish.
By Instruction No. 4 the jury were charged that if they found from the evidence that defendant was not guilty of assault with intent to ravish they should determine whether defendant was guilty of common assault, and instructed the jury, in substance, that if they found that defendant did "unlawfully assault Elizabeth Hartle without intent to ravish and carnally know, and by placing his hand upon her", they should find defendant guilty of common assault. Among the verdict forms submitted wereone to be used in the event the jury found defendant guilty of assault with intent to ravish, and the other if they found defendant guilty of common assault.
The jury returned into court a verdict finding defendant guilty of common assault, and by said verdict assessed the punishment at six months in the City Workhouse and a fine of one hundred dollars. The other form of verdict above mentioned was returned unused.
Thereafter, defendant filed in said cause a motion to set aside the verdict finding defendant guilty of common assault and to grant him a new trial with "reference thereto". This motion was by the court sustained on April 3, 1950. Subsequently, and on June 2, 1950, defendant filed a motion to quash and a plea in bar, which was by the court overruled on October 26, 1950. Thereafter, and on November 6, 1950, defendant filed in said cause a plea of autrefois acquit. Said plea, as preserved in the bill of exceptions, is as follows:
"Now comes the defendant in the above entitled cause and avers that he has been acquitted of the felony charge of assault with intent to ravish against him, on the 19th day of January, 1950, in Division 12 of the Circuit Court of the City of St. Louis, and that to try him again on the felony charge would put him in jeopardy of his liberty for a second time for the same offense and would deprive him of his constitutional rights, as guaranteed by Section 19 of Article 1, of the Constitution of Missouri, 1945 [V.A.M.S.], and by the Fourteenth Amendment of the Constitution of the United States.
"Wherefore, defendant prays for such order as will prevent and bar his further prosecution on the matter in which he stands acquitted." The foregoing motion was heard by Judge Robert J. Kirkwood in Division 1 of the Circuit Court for Criminal Causes on November 8, 1950, and was overruled by said judge on said date. On November 9, 1950, said cause came on for trial and was on said date assigned to Division 12 of said court for trial. On November 13, 1950, the cause was called for trial in Division 12, and on said date defendant refiled in said cause his plea of autrefois acquit. In support of said plea, defendant offered the following in evidence: the two verdict forms heretofore mentioned; Instruction No. 4, given at the previous trial, by which the jury was authorized to find defendant guilty of common assault; and the motion for new trial filed by defendant after the first trial. The court overruled defendant's plea. Thereafter, the trial progressed and resulted in a verdict of conviction for common assault. The appeal in this case was taken to the Supreme Courts, *643 and that court transferred the appeal to this court on the ground that jurisdiction lay in this court.
Appellant assigns as error the action of the trial court in overruling his "motion to quash and plea in bar". Said motion is neither incorporated in, nor called for, in the bill of exceptions. We are, therefore, precluded from considering said assignment. State v. Tatman, 312 Mo. 134, 278 S.W. 713.
Appellant next assigns as error the overruling of his plea of autrefois acquit. In support of this assignment it is urged that when the State forced the appellant to stand trial on the charge of assault with intent to ravish he was denied rights guaranteed him by Sections 17 and 19 of Article 1 of the Missouri Constitution, and rights accorded him under Sections 556.240, 556.260, and 479.100 RSMo 1949, V.A.M.S. It is further urged that said action of the court constituted a denial of equal protection of the laws and of due process, in contravention of Section 1 of the Fourteenth Amendment of the Federal Constitution, and Section 10, Article 1 of the Constitution of Missouri.
The appeal in this case was taken to the Supreme Court, presumably on the ground that there were constitutional questions involved. As the Supreme Court transferred the case to this court, we must treat the transfer order as an adjudication of the fact that this court has exclusive jurisdiction of the appeal, and that the case involves no constitutional question. State ex rel. Cornelius v. McClanahan, 221 Mo.App. 399, 278 S.W. 88; State v. Nece, Mo.App., 255 S.W. 1075; Dickey v. Orr, 132 Mo.App. 416, 111 S.W. 910; State v. Veltrop, Mo.App., 6 S.W.2d 638.
In a prosecution for a felonious assault with intent to ravish a defendant may properly be convicted of a common assault. Section 556.230 RSMo 1949, V.A.M.S.; State v. Shaw, Mo.Sup., 220 S.W. 861; State v. Hoag, 232 Mo. 308, 134 S.W. 509. And, if a conviction of the lesser offense is had, and thereafter a new trial is granted, the cause stands as though there had been no trial at all, and defendant may be tried for the offense charged in the information. Article 1, Section 19, Missouri Constitution; State v. Stallings, 334 Mo. 1, 64 S.W.2d 643. There is no acquittal of the greater charge, hence no deprivation of any right accorded a defendant by Sections 556.240 and 556.260 RSMo 1949, V.A.M.S.
What we have said also disposes of appellant's contention that the circuit court had no jurisdiction to try the case. Said contention is based on the false premise that there was no felony charge pending against appellant at the time of the second trial. State v. Stallings, 334 Mo. 1, 64 S.W.2d 643; Section 19, Article 1, Const. of Missouri.
By his third assignment of error appellant contends that he could not be legally convicted of common assault under Section 556.230 RSMo 1949, V.A.M.S., because he was charged upon an information and not by indictment. Section 556.230 reads: "Upon an indictment for an assault with intent to commit a felony, or for a felonious assault, the defendant may be convicted of a less offense; and in all other cases, whether prosecuted by indictment or information, the jury or court trying the case may find the defendant not guilty of the offense as charged, and find him guilty of any offense, the commission of which is necessarily included in that charged against him."
Appellant contends that the foregoing statute must be strictly construed and confined to those cases where one being tried for assault with intent to commit a felony is charged by indictment.
The foregoing statute was enacted in 1879, R.S.Mo. 1879, sec. 1655. At that time felonies could only be prosecuted by indictment. State v. Bonner, 178 Mo. 424, 77 S.W. 463. By the amendment to the Constitution of Missouri, adopted by the people November 6, 1900, indictments and informations became concurrent methods for the prosecution of felonies. Laws of Missouri, 1905, page 314; Art. 2, sec. 12, Constitution of Missouri 1875, V.A.M.S.; State v. Bonner, 178 Mo. 424, 77 S.W. 463. Thereafter, the Forty-first General Assembly amended *644 Section 2476, R.S.Mo.1899, by providing that all felonies, with certain exceptions, should be prosecuted by indictment or information. Laws of Missouri, 1901, page 138. Said section is now Section 545.010 RSMo 1949, V.A.M.S. The same general assembly also enacted the following new section in lieu of Section 2482, R.S.Mo. 1899, Laws of Missouri, 1901, page 139, now Section 546.010 RSMo 1949, V.A.M.S.: "Section 2482. The trial and all proceedings upon any information filed in a court of record shall be governed by the law and practice applicable to trials upon indictments in said court."
It is our opinion that said section, when read in connection with Section 556.230, supra, authorizes a conviction for common assault where the person being tried is charged by information with an assault with intent to commit a felony.
Appellant relies upon State v. Clipper, 142 Mo. 474, 44 S.W. 264; State v. Carr, 142 Mo. 607, 44 S.W. 776; and State v. Cornelius, 143 Mo. 179, 44 S.W. 717. Those cases construe Sections 4289 and 4290 RS Mo 1889, Sections 547.200, 547.210 RSMo 1949, V.A.M.S., which sections allowed an appeal by the State whenever an indictment was quashed or rendered insufficient on demurrer, or when judgment was arrested, as not authorizing the State to appeal from an order quashing an information in a misdemeanor case, notwithstanding Section 4062, R.S.Mo.1889, Section 546.010 RSMo 1949, V.A.M.S., which provided that: "The trial and all proceedings upon any information filed in a court of record shall be governed by the law and practice applicable to trials upon indictment for misdemeanor * * *." The basis of the ruling was, as stated by the court in State v. Carr, supra [142 Mo. 607, 44 S.W. 778]: "This section (4062, R.S.Mo.1889) * * * relates to trials and their ordinary incidents when the charge is contained in an information. It does not relate in the remotest manner to the process of appeal or error."
It is apparent that the principle announced cannot be considered as authority for the proposition that Section 546.010 RSMo 1949, V.A.M.S., does not make the law of Section 556.230 RSMo 1949, V.A.M.S., applicable to the trial of a person charged by information with felonious assault.
Appellant complains of Instruction No. 2. Said Instruction is as follows:
"If you find and believe from the evidence that defendant is not guilty of assault with intent to ravish, then you will determine whether defendant is guilty of common assault.
"The court instructs the jury if you find and believe, beyond a reasonable doubt, from the evidence in this case that at the City of St. Louis and State of Missouri, on the 24th day of April, 1948, the defendant, Joseph Higgins, did unlawfully assault the witness, Elizabeth Hartle, now known as Elizabeth Burnes, by placing his hand upon her, without intent to ravish and carnally know her, then you will find the defendant guilty of common assault and assess his punishment at a fine not exceeding One Hundred Dollars, or imprisonment in the workhouse not exceeding six months, or by both such fine and imprisonment.
"And unless you find all the facts so to be, you will acquit the defendant."
Appellant contends that the foregoing instruction is erroneous for the reason that it did not define "unlawful assault", or what constituted a "common assault" under Section 559.220 RSMo 1949, V.A.M.S., and permitted the jury to draw an inference that the mere placing a hand on the prosecutrix made the crimeirrespective of any other fact or circumstance, so long as the act was not done with intent to ravish and carnally know her. It is further urged that the instruction did not submit all of the constituent elements necessary for finding defendant guilty of common assault.
The prosecutrix, Elizabeth Hartle, at the time of the trial, stated that she was married and gave her name as Elizabeth Burnes. We will, therefore, hereafter refer to the prosecutrix as Elizabeth Burnes.
*645 Mrs. Burnes testified that on April 24, 1948, she, with a friend named Lloyd Current, resided at 720 South Fourth Street in the City of St. Louis. Number 720 South Fourth Street is located on the east side of Fourth Street, a few doors south of the intersection of Fourth and Cerre Streets. The latter runs east and west. Fourth Street runs north and south. Broadway, which runs north and south, is one block west of Fourth Street.
On April 24, 1948, between 9:00 and 10:00 o'clock in the evening, Mrs. Burnes started from her home to a tavern located on the southeast corner of the intersection of Broadway and Cerre Street to get a can of beer; she carried a bucket and a coca cola bottle in her right hand, and in her left hand had a fifty cent piece. Mrs. Burnes testified: "As I came out of my door, there was a colored fellow grabbed me by my right wrist. * * * He dragged me across the street and alongside of a parking lot. * * * He asked me if I would go in the lot with him. * * * I told him `No'. * * * He offered me three dollars to go into the lot with him.
* * * He said he wanted part of me. * * * He said (at the police station) he wanted part of me, and an act of intercourse. * * * I tried to scream, and he had his hand over my mouth. * * * He grabbed my right wrist at the door.
* * * I was just outside the door when he grabbed my arm. * * * Oh, first he did ask me if I had any money, and I told him `No', and he offered me fifty cents then, and then he offered me three dollars later."
Mrs. Burnes further testified that defendant dragged her across Fourth Street and west on the sidewalk on the south side of Cerre Street, about 150 or 175 yards. When they reached a point about halfway between Fourth Street and Broadway a police scout car appeared, at which time defendant released his hold upon the prosecutrix and ran toward Broadway, where he was captured. Mrs. Burnes testified that her struggle with the defendant lasted about twenty minutes. During that time she did not drop the bucket or coca cola bottle, or lose her hold on the fifty cent piece. After the police arrived, the prosecutrix proceeded to the tavern on Broadway where she purchased a can of beer. She then went home, accompanied by one of the boys in the neighborhood.
On cross-examination, Mrs. Burnes testified that she told the police officer at the police station that defendant did not force her into the lot, but was only trying to get her to go there by offering her money. She stated: "He was trying to talk me into going there, and I was also struggling with him; he was also trying to pull me there along with the talking."
The defendant testified that on the evening of April 24, 1948, he visited at the home of his sister-in-law who lived in the neighborhood of Fourth and Cerre Streets. He denied that he saw or talked to Mrs. Burnes on the east side of Fourth Street. He stated that he left his sister-in-law's house about twenty minutes to ten and was on his way to catch a streetcar on Broadway when he first saw the prosecutrix. He came to Cerre Street by coming through a lot located on the north side of Cerre and crossed the latter street to the south side, some distance west of Fourth Street. He stated that he was hurrying to catch the streetcar when the prosecutrix tapped him on the shoulder and: "She say, `Otis'. Well, I stopped, and as I stopped she said did I want to see her, and I said, No, lady, I am on the way to catch a streetcar'. And the conversation went on and she said did I have any money, and I said `No', and she said did I have three dollars, and I said `No'. I showed her fifty cents, taken out of my left pocket, and she takes the fifty cents, and I grabbed her right wrist with my left hand, and take my fifty cents back, when the cops grab me. * * * Well, when Officer Newport grabbed me, Corporal Mullarky and Sergeant Bender took her a little east, and they was questioning her, and she constantly kept repeating, `No, no', that's all I could hear of the conversation. * * * When Sergeant Bender gets through questioning Miss Hartle, he came back toward the car, and I and Officer Newporthe said: `Why don't you shoot the black son-of-a-bitch', and Newport says, *646 `How can I shoot the man when he doesn't even run or resist arrest?' * * * They pushed me in the car and we went to the station. * * * She asked me for three dollars. * * * She had a bucket, * * * a little round bucket * * * one of those swing handles."
Defendant denied that he had at any time put his hand over Mrs. Burnes' mouth, or that he had tried to force her to go into a lot with him. He stated that he did not "proposition" Mrs. Burnes, but thought from her approach that she was "soliciting". He denied that he ran when the police appeared on the scene. He further testified: "Q. But your testimony is that you held out your hand to show her how much money you had, and told her you were in a hurry to catch a streetcar, but you stopped to show her how much money you had, and she seized the fifty cents out of your hand? A. Yes, sir."
Common assault may be defined as any intentional unlawful offer of bodily injury to another by force, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented, or offensive contact, or the offer thereof, of the kind likely to cause pain of mind, such as, in the case of a woman, a sense of shame or other disagreeable emotion resulting from undue familiarity toward or upon her and against her will. See State v. Lynn, Mo.App., 184 S.W.2d 760; Stripling v. State, 47 Tex. Cr.R. 117, 80 S.W. 376; Chambless v. State, 46 Tex.Cr.R. 1, 79 S.W. 577; Floyd v. State, 29 Tex.App. 341, 15 S.W. 819.
There was evidence adduced by the State tending to show defendant's guilt of the crime above mentioned. On the other hand, the defendant offered evidence from which the jury could find that the element of intent to harm was not present. According to that evidence, defendant's purpose in placing his hands upon Mrs. Burnes was, not to effect an offensive bodily contact, but to recover property wrongfully taken from him. There was a real issue in the case on the matter of intent, a necessary element of the crime charged. There was also evidence on behalf of defendant that Mrs. Burnes, by words and acts, manifested an apparent willingness to submit to an invasion of her right to be free from such offensive contact. The absence of consent is a fact necessary to be established by the prosecution and not an exculpatory matter to be established by the defendant.
In a prosecution of a criminal charge the court should, by its instructions, advise the jury of all the constituent elements of the offense charged and the facts necessary to be shown to authorize a conviction. 6 C.J.S., Assault and Battery, § 128(c), page 1003; State v. Griggs, 361 Mo. 758, 236 S.W.2d 588; State v. Stewart, 329 Mo. 265, 44 S.W.2d 100; State v. McCaskey, 104 Mo. 644, 16 S.W. 511.
In our opinion, Instruction No. 2 is deficient in two respects. Under said instruction the mere placing of hands upon the prosecutrix would be an unlawful assault. Such an act, of itself, does not constitute an unlawful assault. Courtney v. Kneib, 131 Mo.App. 204, 110 S.W. 665. In order to have made it an unlawful assault the act must have been against the will of the prosecutrix, and intentionally done in such a rude, insolent or lustful manner as likely to cause her injury by offending against her sense of personal dignity. The jury was not required to find the existence of these elements of the crime before finding defendant guilty.
The Assistant Circuit Attorney who appeared for the State at the argument of this appeal admitted, with commendable frankness, that the instruction contained error and, even though we recognize that his admission is in no sense binding upon us, it is not without its persuasive effect in reaching our own conclusion that the instruction was, in fact, erroneous in the respects pointed out.
Other points are urged by appellant in his assignments of error, but since the judgment must be reversed and the cause remanded for the error in giving Instruction No. 2, we need not take notice of such *647 further assignments of error. The facts of the case considered, it is not likely that the other alleged errors will appear upon the next trial.
The judgment is reversed and the cause is remanded for new trial.
BENNICK, P. J., and HOLMAN, J., concur.